UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHS/COMMUNITY HEALTH SYSTEMS, INC., and TRIAD HEALTHCARE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, and IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: |

## ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

1. Jurisdiction is proper in this matter based on diversity of citizenship pursuant to 28 U.S.C. section 1332, subd. (a)(2).

2. Plaintiff CHS/Community Health Systems, Inc. ("CHS/CHSI") is a Delaware corporation with a principal place of business of Franklin, Tennessee. CHS/Community Health Systems, Inc. is a holding company with no employees.

3. Plaintiff Triad Healthcare Corporation ("Triad") is a Delaware corporation with its principal place of business in Franklin, Tennessee. Triad was formerly known as, and is the successor-in-interest to, Triad Hospitals, Inc., which was a Delaware corporation with a principal place of business of Plano, Texas prior to July 25, 2007.

4. Defendant Lexington Insurance Company ("Lexington"), a Delaware Corporation, is a surplus lines property and casualty insurer with its principal place of business in Boston, Massachusetts.

5. Defendant IronShore Specialty Insurance Company ("IronShore"), state of incorporation not known, is a specialty commercial property and casualty insurer with its principal place of business in Hamilton, Bermuda, and with regional offices throughout the United States. Plaintiffs are informed and believe, and based thereon allege, that IronShore is domiciled in the Cayman Islands.

6. Plaintiffs bring this action to obtain a declaration of their rights as policyholders under policies of excess professional liability and umbrella insurance sold to them by Lexington, and under a policy of excess professional liability insurance sold to them by IronShore.

7. Diversity jurisdiction exists because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount of controversy exceeds $75,000 excluding interest and costs.

8. Venue is proper under 28 U.S.C. section 1391, subdivisions (a)(1) because the Middle District of Tennessee is where defendants, as corporations, reside pursuant to 28 U.S.C. section 1391, subdivision (c).

## INSURANCE COVERAGE

9. Lexington, through a producer in Brentwood, Tennessee, sold Quorum Health Resources, LLC ("Quorum"), an affiliate of CHS/CHSI and Triad, an excess insurance policy entitled "Excess Healthcare Professional Liability – Claims Made and Healthcare Umbrella Liability – Claims Made," Policy No. 6801409, effective from August 31, 2008 and August 31, 2010 (the "Lexington Excess Healthcare Professional Liability Policy"), with a limit of $25 million excess of $6 million for "each medical incident" for Healthcare Professional Liability ("Underlying Limits"). CHS/CHSI and Triad are named as additional insureds.

10. The Lexington Excess Healthcare Professional Liability Policy's <u>Excess Healthcare Professional Liability Policy</u>, Section I (hereafter "Lexington Excess Policy"), provides coverage as follows:

> Healthcare Professional Liability
>
> **We** will pay those sums in excess of the Retained Limit set forth in Item 5(a) of the Declaration Page and as described in Section IV., Limits of Insurance, F. Retained Limits, that **you** become legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any **Insured**. The amount we will pay for damages is limited as described in Section IV., Limits of Insurance. The **medical incident** must take place on or after the retroactive date and before the end of the **policy period**. A **claim** for a **medical incident** must be first made against an Insured during the policy period or the extended reporting period, if applicable. A **claim** for a **medical incident** must be made within the coverage **territory**.

(Emphasis in the original here and below.)

11. The Lexington Excess Policy defines "medical incident" in Section I of its General Policy Provisions and Conditions as follows:

> J. **Medical Incident** means any act, error or omission in the providing of or failure to provide **professional services**.

12. The Lexington Excess Policy defines "professional services" in Section I of its General Policy Provisions and Conditions as follows:

> O. **Professional Services** means:
>
> 1. Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling or treatment of deceased human bodies, including, but not limited to, autopsies, organ donation or other procedures;
>
> 2. Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or
>
> 3. Supervising, teaching, proctoring others at **your** request.

13. The Lexington Excess Policy also defines a "claim" in Section I of its General Policy Provisions and Conditions, as follows:

> C. **Claim** means written demand against an **Insured** for monetary damages, including a **suit**.

14. The Lexington Excess Policy sets forth the following in Section III of its General Policy Provisions and Conditions:

> F. Coverage Territory

> **We** will cover an **occurrence**, offense or **medical incident** in the United States of America, its territories and possessions, Canada and Puerto Rico, provided a **claim** is made and **suit** in the United States of America, its territories and possessions, Canada and Puerto Rico.
>
> \*\*\*
>
> J.     Other Insurance
>
> If there is other insurance which applies to the loss resulting from an **occurrence**, offense or **medical incident**, the other insurance must pay first. This Policy applies to the amount of the loss which is more than:
>
> > 1. The Limits of Insurance of the other insurance; and
> > 2. The total of all deductibles and self-insured amounts under all such other insurance.
>
> However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

15.   Plaintiffs will have established the elements necessary to be entitled to coverage under the Lexington Excess Policy once Underlying Limits are exhausted, because:

   a. Plaintiffs will have "become legally obligated to pay others as damages resulting from a medical incident arising out of professional services provided by any Insured."

   b. A "medical incident" took place "on or after the retroactive date and before the end of the policy period."

   c. "Claims" have been made "for a medical incident" that took place "during the policy period."

d. "Claims" were made "within the coverage territory."

16. The Lexington Excess Healthcare Liability Policy's <u>Umbrella Policy</u>, Section I ("Lexington Umbrella Policy"), provides coverage as follows:

    A.    **Bodily Injury and Property Damage**

        **We** will pay those sums in excess of the Retained Limit set forth in Item 5(b) of the Declarations and as described in Section V., Limits of Insurance, E. Retained Limits that an **Insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this Coverage Part applies. The amount **we** will pay for damages is limited as described in Section V., Limits of Insurance.

        This Coverage Part applies to **bodily injury** and **property damage** only if:

        1.    The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the coverage territory; and

        2.    The **bodily injury** or **property damage** occurs after the retroactive date but before the end of the policy period.

        3.    A **claim** for damages because of the **bodily injury** or **property damage** is first made against the insured during the **policy period** or the extended reporting period, if applicable.

    B.    **Personal and Advertising Injury**

        **We** will pay those sums in excess of the Retained Limit set forth in Item 5(b) of the Declarations and as described in Section V., Limits of Insurance, D. Retained Limits that an **Insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this Coverage Part applies. The amount **we** will pay for damages is limited as described in Section V., Limits of Insurance.

This Coverage Part applies to **personal and advertising injury** only if:

1. **Personal injury** is caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by you or on your behalf;

2. **Advertising injury** is caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the coverage territory after the retroactive date but before the end of the **policy period**; and

3. A **claim** for damages because of the **personal and advertising injury** is first made against the insured during the **policy period** or the extended reporting period, if applicable.

17. The Lexington Umbrella Policy defines "bodily injury" in Section I of its General Policy Provisions and Conditions as follows:

> B. **Bodily Injury** means physical injury, sickness or disease sustained by any person, including death resulting from any of these at any time. **Bodily injury** does not include emotional distress or mental anguish unless due to physical injury, sickness or disease.

18. Section III of the Lexington Umbrella Policy defines "personal injury and advertising injury" as follows:

> B. **Personal Injury and Advertising Injury** means injury, including consequential bodily injury, arising out of one or more of the following offenses:
>
> 1. False arrest, detention, or imprisonment;
> \*\*\*
> 5. Oral or written publication of material that violates a person's right of privacy; . . .

19. Section III of the Lexington Umbrella Policy defines "occurrence" as follows:

> I. **Occurrence** means:
>
> 1. As respects **bodily injury or property damage**, an accident, including continuous or repeated exposure to substantially the same general conditions, which results in **bodily injury or property damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**;
>
> 2. As respects **personal injury**, an offense arising out of your business that results in **personal injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **occurrence**, regardless of the frequency of repetition thereof, the number and kind of media used and the number of claimants;
>
> 3. As respects **advertising injury**, an offense committed in the course of advertising your goods, products and services that results in **advertising injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

20. Plaintiffs will have established the elements necessary to be entitled to coverage under the <u>bodily injury</u> provision of the Lexington Umbrella Policy once Underlying Limits are exhausted, because:

   a. Quorum will have "become legally obligated to pay damages" because of "bodily injuries" to which the Umbrella Policy applies.

   b. The bodily injuries were caused by an "occurrence" that took place in the coverage territory.

8

      c.      The bodily injuries occurred "after the retroactive date but before the end of the policy period."

      d.      Claims were made during the policy period.

21. Plaintiffs will have established the elements necessary to be entitled to coverage under the <u>personal and advertising injuries</u> provision of the Lexington Umbrella Policy once Underlying Limits are exhausted, because:

      a.      Plaintiffs will have "become legally obligated to pay damages" because of "personal and advertising injuries" to which the Umbrella Policy applies.

      b.      The "advertising injuries" were caused by "offense[s] committed in the course of advertising [Quorum's] goods, products or services."

      c.      The offense occurred during the policy period.

      d.      Claims were made during the policy period.

22. IronShore, through producer Beecher Carlson Insurances Services in Brentwood, Tennessee, sold <u>Follow Form Excess Policy</u> No. IH-HP079A ("IronShore Policy") effective August 31, 2008 to August 31, 2010, with limits of $20 million in excess of the Underlying Limits and the limits of the Lexington Excess Policy and/or the Lexington Umbrella Policy, covering CHS/CHSI. The IronShore Policy follows form to the Lexington Excess Policy.

23. Plaintiffs gave timely notice of claim to IronShore of all of the Patients' claims, all of which fall within the coverage of the IronShore Policy once the Underlying

Limits and the limits of the Lexington Excess and/or Lexington Umbrella Policy have been exhausted.

## GENERAL ALLEGATIONS

24. Beginning in April 2010, CHS/CHSI and Triad were named as co-defendants in over fifty lawsuits alleging malpractice, negligence, fraud and other claims in Otero County District Court, New Mexico. The plaintiffs in the medical negligence cases are former patients of Gerald Champion Regional Medical Center ("GCRMC") who underwent spinal operations performed by Christian Schlicht, D.O. from 2007 through 2010 (the "Patients"). The allegations in each complaint are substantially similar. A true and correct copy of one of the Patients' complaints making allegations mirrored by all of them is attached to this Complaint as **Exhibit "A"** and incorporated by reference.

25. Dr. Schlicht formerly held privileges at GCRMC. The Patients allege that Dr. Schlicht held himself out as a neurosurgeon. Patients underwent a procedure called "percutaneous disc arthroplasty" or similar procedures performed by Dr. Schlicht and suffered post-procedure complications ranging from pain to paralysis.

26. The Patients allege that Dr. Schlicht was not a neurosurgeon, and that GCRMC and Quorum failed to perform due diligence regarding Dr. Schlicht's training and licensing that would have prevented the Patients from sustaining alleged injuries

caused by Dr. Schlicht. Patients allege that CHS/CHSI and Triad are liable in respondeat superior for the actions of GCRMC and Quorum.

27. Quorum, CHS/CHSI and Triad timely tendered the Patients' complaints to Lexington. Lexington's Healthcare-Malpractice Claims department sent a reservation of rights letter to Quorum on February 10, 2011, asserting several purported coverage defenses under the Lexington Excess Policy, including:

> a. The intentional acts exclusion in Section III(Q) precludes coverage for allegations of intentional acts, including those otherwise covered by the Management Services Errors & Omissions Endorsement (Endorsement No. 9).
>
> b. The Prior Acts Exclusion in Section III(A) precludes coverage for allegations that Quorum knew Dr. Schlicht was performing surgeries "beyond the scope of his privileges or any other acts alleged in the complaints."
>
> c. The Unfair Trade Practices Exclusion in Section III(A) precludes coverage for allegations that Quorum violated the New Mexico Unfair Trade Practices Act, such as the allegations concerning the defendants' conspiracy to misrepresent Dr. Schlicht's training and education, and manipulating the billing nomenclature to obtain payment for his services.

d. The Dishonest Practices Exclusion in Section III(K) likewise precludes coverage for allegations of unfair practices, and also for the battery claims asserted against defendants.

e. The Other Coverage Part Exclusion in Section III(R) precludes coverage for anything otherwise covered in the Umbrella Liability Policy.

f. The Physician's Exclusion in Section III(S) precludes coverage for Dr. Schlicht.

g. The Managed Care Liability Exclusion endorsement (Endorsement No. 4) precludes coverage for the allegations regarding Quorum's purported negligent hiring and credentialing of Dr. Schlicht.

h. Other unspecified coverage defenses under the Lexington Excess Policy which Lexington reserved.

28. Lexington's February 10 letter also asserted coverage defenses under the Lexington Umbrella Policy, including:

a. The complaints' allegations did not appear to be an "occurrence" for the purposes of the policy because the surgeries were not "accidental."

b. The Patients Exclusion in Section IV(N) precludes coverage for all plaintiffs because they are former patients "who were seeking or receiving medical services."

c. The Intentional Acts Exclusion, (Section IV(Q)), Unfair Trade Practices Exclusion (Section IV(V)) and Dishonest Practices Exclusion (Section IV(CC)) precluded coverage for the same reasons set forth in the Lexington Excess Policy.

d. The Other Coverage Part Exclusion in Section IV(Z) precludes coverage for anything otherwise covered in the Lexington Excess Policy.

e. The Prior Acts Exclusion in Section IV(EE) precludes coverage for allegations that Quorum knew Dr. Schlicht was performing surgeries "beyond the scope of his privileges or any other acts alleged in the complaints."

f. Other unspecified coverage defenses under the Lexington Umbrella Policy which Lexington reserved.

29. Plaintiffs understood Lexington's reservation of rights letter to convey the insurance company's intention to interpret the Lexington Excess Policy and the Lexington Umbrella Policy as to limit the coverage available for the Patients' claims once the Underlying Limits were exhausted.

30. IronShore sent a reservation of rights letter to Quorum dated April 19, 2011. Ironshore adopted and incorporated the defenses asserted by Lexington's February 10, 2011 reservation of rights letter. It denied having an obligation to pay any loss "until the Lexington Policy and all applicable self-insured retentions and deductibles relevant to healthcare professional liability coverage, and/or all other insurance are exhausted." Ironshore reserved the right to deny coverage or rescind its policy for reasons not addressed in the February 10 and April 19 letters.

## FIRST CLAIM FOR RELIEF

## FOR DECLARATORY RELIEF

**(Against Defendant Lexington Under The Lexington Excess Policy)**

31. Plaintiffs incorporate paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32. Plaintiffs seek a judicial determination and declaration of their rights and Lexington's obligations under the Lexington Excess Policy pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

33. As to the Lexington Excess Policy, Plaintiffs seek a judicial determination and declaration of their rights as to whether, once the Underlying Limits have been exhausted:

    a. The Patients' complaints are covered on any ground.

b. The intentional acts exclusion in Section III(Q) precludes coverage for losses arising from the Patients' allegations of intentional acts, including those otherwise covered by the Management Services Errors & Omissions Endorsement (Endorsement No. 9).

c. The Prior Acts Exclusion in Section III(A) precludes coverage for losses arising from the Patients' allegations that Quorum knew Dr. Schlicht was performing surgeries, as the Patients allege, "beyond the scope of his privileges or any other acts alleged in the complaints."

d. The Unfair Trade Practices Exclusion in Section III(A) precludes coverage for loss arising from the Patients' allegations that Quorum violated the New Mexico Unfair Trade Practices Act.

e. The Dishonest Practices Exclusion in Section III(K) precludes coverage for losses arising from the Patients' allegations of unfair practices and battery.

f. The Other Coverage Part Exclusion in Section III(R) precludes coverage for losses arising from the Patients' claims otherwise covered in the Lexington Umbrella Policy.

g. The Physician's Exclusion in Section III(S) precludes coverage for losses sustained by Quorum.

      h.      The Managed Care Liability Exclusion endorsement (Endorsement No. 4) precludes coverage for losses arising from the Patients' allegations of Quorum's purported negligent hiring and credentialing of Dr. Schlicht.

34.      An actual, substantial, and justiciable controversy has arisen and presently exists concerning Plaintiffs' rights and Lexington's obligations under the Lexington Excess Policy.

35.      A judicial determination is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights, and Lexington may ascertain its obligations, under the Lexington Excess Policy.

## SECOND CLAIM FOR RELIEF

## FOR DECLARATORY RELIEF

**(Against Defendant Lexington Under**

**The Lexington Excess Policy's Umbrella Policy)**

36.      Plaintiffs incorporate paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37.      Plaintiffs seek a judicial determination and declaration of their rights and Lexington's obligations under the Lexington Umbrella Policy pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

38. As to the Lexington Umbrella Policy, Plaintiffs seek a judicial determination and declaration of their rights as to whether, once the Underlying Limits are exhausted:

    a. The Patients' complaints are covered on any ground.

    b. The Patients' complaints' allegations were an "occurrence" within the meaning of the Lexington Umbrella Policy because the surgeries were not "accidental."

    c. The Patients Exclusion of Section IV(N) precludes coverage for all losses sustained by Patients because they are former patients "who were seeking or receiving medical services."

    d. The Intentional Acts Exclusion, (Section IV(Q)), Unfair Trade Practices Exclusion (Section IV(V)) and Dishonest Practices Exclusion (Section IV(CC)) preclude coverage on the same grounds as Lexington asserted under the Lexington Excess Policy.

    e. The Other Coverage Part Exclusion in Section IV(Z) precludes coverage for anything otherwise covered under the Lexington Excess Policy.

    f. The Prior Acts Exclusion in Section IV(EE) precludes coverage for allegations that Quorum knew Dr. Schlicht was performing surgeries

17

Case 3:11-cv-00449   Document 1   Filed 05/12/11   Page 17 of 20 PageID #: 17

"beyond the scope of his privileges or any other acts alleged in the complaints."

g. Any other provision, condition, exclusion or endorsement of the Lexington Excess Policy reduces or limits Lexington's duty to provide full coverage for all Schlicht-related losses once underlying limits have been exhausted.

39. An actual, substantial, and justiciable controversy has arisen and presently exists concerning Plaintiffs' rights and Lexington's obligations under the Lexington Umbrella Policy.

40. A judicial determination is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights, and Lexington may ascertain its obligations under the Lexington Umbrella Policy.

## THIRD CLAIM FOR RELIEF

## FOR DECLARATORY RELIEF

**(Against Defendant IronShore, Under The IronShore Policy)**

41. Plaintiffs incorporate paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. Plaintiffs seek a judicial determination and declaration of whether the Patients' complaints are covered on any ground, and of their rights and IronShore's

obligations under the IronShore Policy pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

43. Plaintiffs seek a judicial determination and declaration of their rights as to whether, once the Underlying Limits and the limits of the Lexington Excess and/or Lexington Umbrella Policy have been exhausted, coverage applies or is limited in whole or in part by the same defenses asserted by Lexington under the Lexington Excess Policy and the Lexington Umbrella Policy.

## **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Lexington and IronShore as follows:

1. For declaratory judgment as alleged above;
2. Costs of suit; and
3. Such other relief as is just and proper.

BUERGER, MOSELEY & CARSON, PLC

By: /s/ Lisa M. Carson
Lisa M. Carson, TN BPR #14782
306 Public Square
Franklin, TN 37064
Telephone: (615) 794-8850
Facsimile: (615) 790-8861

ANDERSON, KILL, WOOD & BENDER, P.C.

By: _David E. Wood / by express permission_
David E. Wood, CA BPR #121170
(Pro Hac Vice Motion pending)
864 East Santa Clara Street
Ventura, CA 93001
Telephone: (805) 288-1300
Facsimile: (805) 288-1301

*Attorneys for CHS/Community Health Systems, Inc. and Triad Healthcare Corporation, Plaintiffs*