UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHS/COMMUNITY HEALTH SYSTEMS, INC., and TRIAD HEALTHCARE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, and IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>Defendants.<br><br>and<br><br>QUORUM HEALTH RESOURCES, LLC<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY and IRONSHORE SPECIALTY INSURANCE COMPANY<br><br>Defendants. | ) | No.: 3:11-0449 JTN/JEG<br><br>Consolidated with Case No. 3-12-0248<br><br>**Hon. Judge John T. Nixon**<br>**Hon. Magistrate Judge Juliet Griffin** |

**JOINT INITIAL CASE MANAGEMENT ORDER**
**FOR CONSOLIDATED CASES**

Plaintiffs Quorum Health Resources, LLC, CHS/Community Health Systems, Inc., and Triad Healthcare Corporation (collectively, "plaintiffs"), with defendants Lexington Insurance Company and Ironshore Specialty Insurance Company ("defendants")


Case 3:11-cv-00449 Document 69 Filed 05/14/12 Page 1 of 11 PageID #: 565

(collectively, the "parties"), through their counsel, jointly submit this initial case management order pursuant to this Court's order dated April 30, 2012.

## I. THE PARTIES' RESPECTIVE THEORIES OF THE CASE.

### A. Plaintiffs CHS/, Triad, and QHR.

Quorum Health Resources, LLC ("QHR") is a subsidiary of CHS/Community Health Systems, Inc. ("CHS/") and Triad Healthcare Corporation ("Triad"). QHR provides management and consulting services to hospitals and health care facilities throughout the United States. Among QHR's clients is the Otero County Hospital Association, doing business as Gerald Champion Regional Medical Center in Alamogordo, New Mexico (the "Hospital"). QHR provides the Hospital with key executive personnel, including a Chief Executive Officer and Chief Financial Officer.

The contract between QHR and the Hospital requires the Hospital to maintain specified types and amounts of insurance, and to name QHR and its parent companies as additional insureds. The Hospital bought two policies from Nautilus Insurance Company ("Nautilus") for this purpose: (1) a healthcare professional services liability policy with $1 million limit for each medical incident and a $3 million aggregate; and (2) an excess healthcare excess liability insurance policy with an aggregate limit of $5 million (collectively, the "Nautilus policies"). The Nautilus policies name plaintiffs as additional insureds.


Case 3:11-cv-00449 Document 69 Filed 05/14/12 Page 2 of 11 PageID #: 566

QHR bought a separate policy for itself from Lexington with limits of $25 million, excess of a $6 million retained limit for healthcare professional liability and a $5 million retention for management services errors and omissions liability (the "Lexington policy"). QHR then bought a second layer excess policy with limits of $20 million from defendant Ironshore (the "Ironshore policy"). The Ironshore policy follows the form of the Lexington policy and is triggered by exhaustion of the Lexington policy.

More than 70 of the Hospital's former patients have sued the Hospital and plaintiffs in New Mexico since April 2010. The patients underwent spinal surgery performed at the Hospital by Christian R. Schlicht, D.O., a physician they now allege was not qualified to perform those surgeries (the "*Schlicht* actions"). The patients accuse the Hospital and plaintiffs of negligently and/or intentionally allowing Schlicht to operate despite his lack of training. All but a few of the *Schlicht* actions remain pending, with litigation slowed greatly by the Hospital's petitioning for Chapter 11 bankruptcy in August of 2011 in the District of New Mexico.

QHR tendered defense of the *Schlicht* actions to the Hospital and submitted notices of loss to Lexington and Ironshore. Lexington and Ironshore have asserted defenses to coverage under their policies that plaintiffs adamantly dispute. Plaintiffs have been forced to seek a judicial declaration from this Court of their rights as policyholders under these policies. QHR originally filed its complaint for declaratory relief in the District of New Mexico ("the New Mexico action"), while CHS/ and Triad

filed in this Court ("the Tennessee action"). The two cases were consolidated in this Court on April 3, 2012.

**B. <u>Defendant Lexington</u>.**

Lexington issued to QHR an Excess Healthcare Professional Liability and Healthcare Umbrella Liability Policy, Policy Number 6801409, for the policy period from August 31, 2008 to August 31, 2010. The Lexington Policy is subject to limits of $25,000,000 per each "medical incident" and subject to a $6,000,000 self-insured retention for each "medical incident." The Lexington Policy also contains a Management Services Errors & Omissions Endorsement which is subject to a $5,000,000 self-insured retention for each "occurrence." Plaintiffs were added by endorsement as additional insureds under the Lexington Policy.

Plaintiffs and QHR were named as defendants in numerous lawsuits filed in New Mexico by former patients of Gerald Champion Regional Medical Center in Alamogordo, New Mexico who underwent spinal surgeries performed by Dr. Christian Schlicht. The lawsuits in essence allege, among other things, that the Hospital and QHR failed to perform due diligence regarding Dr. Schlicht's training and qualifications to perform those surgeries, improperly authorized surgical privileges to Dr. Schlicht despite his lack of training, improperly allowed Dr. Schlicht to perform surgeries beyond the scope of those privileges, and improperly concealed their knowledge regarding Dr. Schlicht's lack

of training or credentials. The lawsuits allege that CHS/ and Triad are liable in *respondeat superior* for the alleged conduct of the Hospital and QHR.

By letter dated February 10, 2011, Lexington communicated its coverage position to QHR and requested additional information. Lexington reserved its rights to deny coverage, including but not limited to its rights to deny coverage based on several exclusions contained in the Lexington Policy. Lexington incorporates by reference its reservation of rights letter and the exclusions, conditions, and other coverage defenses noted therein.

Lexington seeks a declaration from this Court regarding Lexington's rights and obligations, if any, under the Lexington Policy and in connection with the *Schlicht* actions. Lexington also disputes that any defense obligations under the Lexington Policy will be automatically triggered if Nautilus pays $6,000,000 to settle or satisfy a judgment in one or more of the *Schlicht* actions. The $6,000,000 retention amount applies to each "medical incident" and because of the numerous patients involved in the individual *Schlicht* lawsuits and the nature of the allegations asserted therein, there are numerous separate "medical incidents" involved which are each subject to a separate retention.

**C. Defendant Ironshore.**

Ironshore issued Excess Healthcare Professional Liability Policy No. IH-HP079A to QHR on a claims-made basis for the policy period August 31, 2008 to August 31, 2010 (the "Ironshore Policy," same as previously defined). For Healthcare Professional

Liability claims, the Ironshore Policy provides limits of $20 million per incident and in the aggregate, excess of the Lexington Policy and all other underlying insurance and applicable retentions.

The Ironshore Policy does not attach or respond and Ironshore has no obligation to pay any Loss, as defined by the Ironshore Policy, until the Lexington Policy and all applicable self-insured retentions and deductibles relevant to healthcare professional liability coverage, and/or all other insurance are exhausted. At the current time, such exhaustion has not occurred and thus Ironshore has no duty to pay any loss, damages, settlements, or defense expenses for the *Schlicht* actions or any other lawsuit. Ironshore incorporates by reference its reservation of rights letter of April 19, 2011 for its complete coverage position.

## II. RESOLVED AND DISPUTED ISSUES.

**A. Resolved Issues**: Jurisdiction and venue.

**B. Disputed Issues**: Plaintiffs' right, and Lexington and Ironshore's defenses, to insurance coverage for losses suffered in the *Schlicht* actions.

## III. PROPOSED CASE SCHEDULE.

**A. Initial Disclosures**: The parties have completed their exchange of initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

**B. Discovery**: Discovery deadlines are provided in the contemporaneously entered order. If the deadlines for completion of discovery have not passed, discovery will not

be stayed while dispositive motions are pending. Should discovery disputes arise, the parties shall confer in good faith in an effort to resolve their differences, and if unable to do so, shall participate in a conference call with Judge Griffin before filing motions related to discovery. The parties have already begun discovery following the resolution of the jurisdiction and venue issues.

**C. Cross-Claims, Third-Party Claims, and Motions to Amend**:

Any motions to amend or cross-claims shall be filed by October 5, 2012.

That deadline shall also apply to the filing of third-party claims.

**D. Identification and Deposition of Expert Witnesses**:

Deadlines for expert disclosures and discovery are provided in the contemporaneously with entered order.

**E. Dispositive Motions**: All dispositive motions shall be filed by February 22, 2013. Responses will be due within thirty-one (31) days after service/filing. The parties may file replies within 21 days after service/filing of the response. Briefs shall not exceed twenty-five (25) pages in length, except reply briefs shall not exceed ten (10) pages in length.



Case 3:11-cv-00449 Document 69 Filed 05/14/12 Page 7 of 11 PageID #: 571

F. **Trial**: The parties estimate a trial length of between five and ten court days.

G. **Subsequent Case Management Conferences**: The next case management conference is scheduled for November 7, 2012, at 9:00 a.m., in Courtroom 764.

## IV. OTHER RELEVANT MATTERS PROVIDED IN LOCAL RULE 16.01(d)(1)(c) AND 16.01(d)(2).

A. **Status of Service of Process**: Both defendants waived service of process.

B. **Status of Responsive Pleadings to the Complaint**: Lexington and Ironshore answered plaintiffs' complaint last year. Likewise, plaintiffs answered Lexington's counter-claim.

C. **Prospects of Settlement**: Not known at this time.

D. **Potential Witnesses**: The parties identified witnesses when they exchanged initial disclosures last year.

E. **Stipulations Regarding Authenticity of Documents**: The parties plan to stipulate to the authenticity of the following documents at this time:

- Nautilus, Lexington and Ironshore policies
- Agreement for Hospital Administrative Services (between Hospital and QHR)
- The operative complaints in the *Schlicht* actions

- Letters of J. Goldwater to QHR re: Nautilus' reservations of rights, dated August 10, 2010, September 23, 2010 and December 1, 2010
- Letter of J. Vidal re: Chartis'/Lexington's reservations of rights, dated February 10, 2011
- Letter of C. Renfer re: Ironshore's reservations of rights, dated April 19, 2011

The parties reserve the right to stipulate to the authenticity of additional documents as the case progresses.

**F.** **Consent to Magistrate Judge**: The parties wish to have the insurance coverage issues in this litigation decided by an Article III Judge.

## V. ELECTRONIC DISCOVERY.

The parties have discussed electronic discovery and agree to be bound by Administrative Order 174.

It is so ORDERED.

Entered this _______ day of May, 2012.

JULIET E. GRIFFIN
UNITED STATES MAGISTRATE JUDGE


Case 3:11-cv-00449 Document 69 Filed 05/14/12 Page 9 of 11 PageID #: 573

Approved for entry:

**BUERGER, MOSELY & CARSON, PLC**
306 Public Square
Franklin, TN 37064
Tel: (615) 794-8850
Fax: (615) 790-8861

By: /s/ Lisa M. Carson
Lisa M. Carson, TN BPR No. 14782

**ANDERSON KILL WOOD & BENDER, P.C.**
864 East Santa Clara Street
Ventura, CA 93001
Tel: (805) 288-1300
Fax: (805) 288-1301

By: /s/ David E. Wood
David E. Wood, Cal. Bar No. 121170

Attorneys for Plaintiffs CHS/Community Health Systems, Inc. and Triad Healthcare Corporations

**FROST BROWN TODD LLC**
400 West Market Street, Suite 3200
Louisville, Kentucky 40202-3363
Tel: (502) 568-0206
Fax: (502) 581-1087

By: /s/ Douglas W. Langdon
Douglas W. Langdon

Attorneys for Defendant Lexington Insurance Company

**MCKELLAR HYDE, PLC**
411 Broadway, Suite 302
Nashville, Tennessee 37203
Tel: (615) 866-9699
Fax: (615) 866-9863

By /s/ Andrea T. McKellar
Andrea T. McKellar

**TROUTMAN SANDERS LLP**
401 Ninth Street, NW
Washington, D.C. 20004
Tel: (202) 662-2021
Fax: (202) 654-5826

By: /s/ Clarence Y. Lee
David M. Gische
Clarence Y. Lee

Attorneys for Defendant Ironshore Specialty Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been electronically delivered to David E. Wood, Anderson Kill Wood & Bender, P.C., Attorneys for Plaintiffs, 864 East Santa Clara Street, Ventura, CA 93001; Douglas W. Langdon, Frost Brown Todd, LLC, Attorneys for Defendant Lexington Insurance Company, 424 Church Street, Ste. 1600, Nashville, TN 37219-2308; Andrea McKellar, McKellar Hyde, PLC, Attorneys for Ironshore Specialty Insurance Company, 411 Broadway, Suite 302, Nashville, TN 37203; David M. Gische and Clarence Y. Lee, Troutman Sanders, LLP, 401 Ninth Street, NW, Washington, D.C. 20004, on this 9th day of May, 2012.

/s/ Lisa M. Carson
Lisa M. Carson