IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHS/COMMUNITY HEALTH )
SYSTEMS, INC.; TRIAD )
HEALTHCARE CORPORATION; and )
QUORUM HEALTH RESOURCES, )
LLC ) No. 3-11-0449
 )
v. ) Consolidated with Case No. 3-12-0248
 )
LEXINGTON INSURANCE )
COMPANY; and IRONSHORE )
SPECIALTY INSURANCE COMPANY )

O R D E R

Pursuant to the orders entered June 25, 2012, and June 26, 2012 (Docket Entry Nos. 89 and 91), a hearing on the motion to intervene was held on July 10, 2012, at which time the motion (Docket Entry No. 72) was GRANTED as provided herein.

The United Tort Claimants ("UTC") sought to intervene as of right or permissively as plaintiffs in this case. The intervenor consists of a group of medical malpractice claimants who have asserted claims in New Mexico federal and state courts against, inter alia, the Otero County Hospital Association, Inc. d/b/a Gerald Champion Regional Medical Center ("the hospital") located in Alamogordo, New Mexico, Quorum Health Resources, LLC ("QHR"), which managed the hospital, and doctors performing surgery at the hospital.[1] The hospital has filed for Bankruptcy protection in the United States Bankruptcy Court for the District of New Mexico. The parties have been engaged in settlement conferences in the Bankruptcy case with Magistrate Judge Alan C. Torgerson in the District of New Mexico.

QHR sued the defendant insurers in the District of New Mexico seeking a declaratory judgment that the defendants are required under excess liability policies to defend and indemnify

---

[1] In the New Mexico federal action, the tort claimant also sued CHS/Community Health Systems, Inc. and Triad HealthCare Corporation, but the claims against them were dismissed for lack of personal jurisdiction.

QHR in the New Mexico actions brought by the tort claimants. A few days later, CHS/Community Health Systems, Inc. ("CHS"), and Triad Healthcare Corporation ("Triad"), affiliates of QHR, sued the defendant insurers in this District essentially seeking the same relief. The New Mexico action was transferred to this District and the two cases were consolidated.

QHR has no opposition to the motion to intervene and, in fact, urged the Court to grant the motion. The defendants oppose the motion.

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides as follows:

On timely motion, the court must permit anyone to intervene who:

***

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A movant seeking to intervene as of right pursuant to Rule 24(a)(2) must show the following: (1) that the motion to intervene was timely; (2) that the movant has a substantial interest in the subject matter of the case; (3) that the movant's ability to protect that substantial legal interest may be impaired in the absence of intervention; and (4) that the parties already before the Court may not adequately represent the proposed intervenor's interest. Coalition to Defend Affirmative Action v. Granholm, 501 F.3d 775, 779 (6th Cir. 2007), petition for cert. denied, 2008 WL 728200 (Oct. 6, 2008); Northeast Ohio Coalition for the Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1007 (6th Cir. 2006); Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 315 (6th Cir. 2005); United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005); United States v. Tennessee, 260 F.3d 587, 591-92 (6th Cir. 2001); Stupak-Thrall v. Glickman, 226 F.3d 467, 471 (6th Cir. 2000); Jordan v. Michigan Conference of Teamsters Welfare Fund, 207 F.3d 854, 862 (6th Cir. 2000); Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999); Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997); United States v. Detroit Internat'l Bridge Co., 7 F.3d 497, 499 (6th Cir. 1993); Cuyahoga Valley Ry. Co. v. Tracy, 6 F.3d 389, 395 (6th Cir. 1993); Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990); Grubbs v. Norris, 970

F.2d 343, 345 (6th Cir. 1989); Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987). A movant for intervention must satisfy all four prongs and failure to satisfy one of the prongs will result in denial of the motion. United States v. Michigan, supra; Grubbs, supra.

Although most frequently addressed in the context of determination of whether a putative intervenor has a substantial interest in the litigation, the Court of Appeals for the Sixth Circuit has also held that, in general, requests for intervention should be construed liberally in favor of granting intervention. See Midwest Realty Mgmt. Co. v. City of Beavercreek, 93 Fed.Appx. 782, 784 (6th Cir. 2004); Stupak-Thrall, 226 F.3d at 472; Purnell, 925 F.2d at 950.

## A. Timeliness

An evaluation of the timeliness of a motion to intervene should be made in the context of the relevant circumstances. Jansen, supra; Bradley v. Milliken, supra. Factors to be considered are (1) the point to which the lawsuit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time that the movant knew or should have known of its interest in the case before it actually sought to intervene; (4) the prejudice to the original parties due to the movant's failure to promptly intervene after it knew or should have known of its interest in the case; and (5) the existence of unusual circumstances militating against or in favor or intervention. United States v. Tennessee, 260 F.3d at 592; Stupak-Thrall, 226 F.3d at 473; Cuyahoga Valley, 6 F.3d at 395-96; Jansen, supra; Grubbs, supra.

There is no dispute about the timeliness of the motion to intervene. The initial case management orders were entered on May 14, 2012 (Docket Entry Nos. 69-70), and little activity has occurred since that time, other than the parties' participation in mediation sessions with Magistrate Judge Torgerson. The intervenors explain that the need and right to intervene did not ripen until May 17, 2012, during the mediation sessions, when the intervenors and QHR reached an agreement in the Bankruptcy proceeding. See Docket Entry No. 74, at 5-8. The parties expect the Bankruptcy Court will confirm that agreement on August 3, 3012.

B. Substantial Interest in the Subject Matter

The UTC maintains that whether the defendants are willing to defend and indemnify QHR is critical to a resolution of the intervenors' claims against QHR and the other defendants in the malpractice cases. The defendants correctly point out that the intervenors are not parties to the insurance policies at issue in this action, and there is a "no action" clause in the Lexington policy precluding a direct action against the insurers. The defendants also contend that the movant has only a "speculative or hypothetical interest" in the insurance proceeds unless and until there is a judgment against the plaintiffs and that it is well-settled that a tort plaintiff does not have a substantial legal interest in the potential proceeds of a defendant's insurance policy. Docket Entry No. 79, at 7-10; Docket Entry No. 80, at 2.

The UTC does not seek any direct payment from the defendants and thus this declaratory judgment action will not become entangled with the underlying tort actions. While the Court recognizes that many courts have held that a tort plaintiff is normally not entitled to intervene even in declaratory judgment actions, the Court of Appeals for the Sixth Circuit has not ruled on the specific issue and there is no unanimity among other courts. See Teague v. Bakker, 931 F.2d 259 (4th Cir. 1991); American Cas. Co. of Reading, Pa. v. Continental Props., Inc., 2012 WL 569022 (S.D. Ohio Feb. 22, 2012); TIG Specialty Ins. Co. v. Financial Web.com, Inc., 208 F.R.D. 336 (M.D. Fla. 2002); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129 (N.D. Ohio 1992). See also General Ins. Co. of Am. v. Rhoades, 196 F.R.D. 620, 624 (D.N.M. 2000) ("the contingent nature of an interest is only one a (sic) factor to be considered in analyzing the intervention issue, rather than determinative of the question"); Athridge v. Iglesias, 2000 WL 1780273, *4 n.4 (D.D.C. Nov. 14, 2000) ("[t]here is a perfect split among the federal cases as to whether the tort claimant against an insured has a significant interest").

What provides the UTC a substantial interest in this case is the settlement discussions, culminating in the term sheet reflecting a contingent agreement that millions of dollars be paid to the UTC. See Docket Entry No. 79, at 7-10. Under that agreement, QHR would no longer be "on

4

the hook" for further damages, but it will, according to the UTC, be exposed to injury to its business reputation. In other words, if QHR does not prevail on the coverage issue in this case, the UTC will have no right to pursue further action against QHR, so QHR does not have the risk it previously faced. Although defendant Lexington has now agreed to defend QHR in the New Mexico actions under a reservation of rights, QHR's defense will not be affected, but UTC argues that its interests and QHR's interests are no longer aligned. Thus, the UTC contends that a resolution of this case could eviscerate the rights of the UTC to coverage.

The defendants counter that the UTC itself created the situation its counsel described by entering into the term sheet in New Mexico, suggesting that the UTC should not be permitted to benefit from the situation that it voluntarily created by being permitted to intervene. Whether or not the UTC created the situation, the landscape has now changed, providing the UTC a substantial interest in this litigation that it did not previously have and that it would not ordinarily be permitted to pursue as an intervenor in this action.

### C. Impairment of Movant's Interest

The burden of showing that the interest of the intervenors may be impaired in the absence of intervention is minimal. See Miller, 103 F.3d at 1247. See also Purnell, 925 F.2d at 948; Grutter, 188 F.3d at 399. Consideration of this factor dovetails into consideration of the adequacy of representation and will be addressed below.

### D. Adequacy of Representation

Again, the movant has only a minimal burden of showing that the existing parties may not adequately represent the movant's interest. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); Blackwell, 467 F.3d at 1008; United States v. Michigan, supra; Grutter, 188 F.3d at 400; Litton by Arnold v. Commissioner of Health & Env't, 973

5

F.2d 1311, 1319 (6th Cir. 1992); Doe v. Briley, 2007 WL 1345386, * 5 (M.D. Tenn. May 7, 2007) (Trauger, J.).

A determination of adequacy of representation can involve consideration of whether there is collusion between the existing parties or whether the parties have adverse interests to the putative intervenor. See Purnell, 925 F.2d at 949-950. While there is no assertion of "collusion," the interests of the UTC and QHR may become adverse.

In its statement of non-opposition (Docket Entry No. 74), to the motion to intervene, QHR maintains that "[a]t present . .. the UTC and QHR have consistent interests in defeating the excess insurers' meritless overage defenses." Docket Entry No. 74, at 3. However, at oral argument, it became clear to the Court that the interests of the UTC and QHR could well become divergent. In fact, during oral argument, counsel for QHR agreed that the interests of QHR and the UTC are adverse, despite the Texas settlement.

The Court categorically rebuffs any notion that counsel for the plaintiffs would somehow not advocate zealously for their clients and totally credits the representation of QHR's counsel that QHR is "in one hundred percent." However, QHR's counsel made it clear that QHR and the UTC are not "willing bedfellows," and that QHR is concerned about the UTC's lack of trust in QHR's prosecution of this case. It is within the realm of possibility that the plaintiffs' interests in resolving this litigation could lead to a result that would impair and/or be detrimental to the interests of the UTC, which could, as counsel for QHR suggests, leave QHR exposed to accusations of bad faith. It is also possible that the UTC could craft arguments or raise legal grounds that would not be in the best interests of QHR to raise.

This case presents an unusual situation in which the UTC and QHR, adversaries in the Texas tort actions, are aligned in their desire to allow the UTC to intervene in this case. It appears that QHR takes its position not only because of the agreement reached in the recent mediation, see Docket Entry No. 74, at 6, § 4, but also because it fears that further action could be taken by the UTC

if QHR does not prosecute this case taking into account the interests of the UTC. That concern in and of itself militates in favor of permitting intervention.

Taking into account that the Sixth Circuit has directed that requests for intervention be treated liberally, along with the minimal standards for determining impairment of interest and inadequate representation and the unusual circumstances in this case, the Court finds that the motion to intervene should be granted.

Having determined that intervention is appropriate under Rule 24(a)(2), it is not necessary to address whether the movant should be granted permissive intervention under Rule 24(b)(2).

## E. Conditions on Intervention

Conditions may be imposed when granting intervention relating to the conduct of the proceedings and scheduling matters pursuant to Rule 16 and the Court's inherent right to manage its cases. See Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 381-383, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring); Advisory Committee Notes to the 1996 amendments to Rule 24. Such conditions relate to the conduct of the proceedings and scheduling matters pursuant to Rule 16 and the Court's inherent right to manage its cases.

Defendant Lexington emphasizes the risk of delay and procedural complication if intervention were permitted, especially in light of what defendant Lexington described as "a tight and carefully tailored scheduling order, which provides staggered deadlines for discovery and dispositive motion briefing on specific issues," as reflected in the order entered May 14, 2012 (Docket Entry No. 70). See Docket Entry No. 80, at 2. These are legitimate concerns.

Counsel for UTC explained that UTC's role in this litigation would be to "watch," not to independently prosecute the case, and could file additional briefs relating to motions submitted in the case.

Based on the defendants' legitimate concerns and the representations of counsel for the UTC that they will not be significantly involved in this action, the role of the intervenors shall be limited as follows:

1.  Counsel for the intervenor may attend any deposition taken in this case;

2.  The original parties in this case shall serve copies of all filings on counsel for the intervenors that they would have served on each other;

3.  The intervenor may file additional memoranda in support of or in opposition to any motion filed by the parties, if necessary; and

4.  Except as otherwise ordered and to the extent permitted by the trial judge, counsel for the intervenor may participate in the trial in this case.

If the intervenors seek to expand their role in this case, they must obtain Court approval or consent of all other parties.

QHR shall provide to UTC's counsel a draft of any memoranda it expects to file seven (7) days prior to making such filing for any input UTC may have in an effort to obviate the need for UTC to make a separate filing. The Court does not require that QHR accept UTC's input or make revisions in accord with UTC's suggestions, but expects that counsel for UTC and QHR will engage in a dialogue to eliminate duplicative and unnecessary filings by UTC.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than fourteen (14) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 72.02(b)(1) of the Local Rules of Court and Rule 72(a) of the Federal Rules of Civil Procedure.

It is so ORDERED.

_____
JULIET GRIFFIN
United States Magistrate Judge