IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHS/COMMUNITY HEALTH SYSTEMS, INC.; TRIAD HEALTHCARE CORPORATION; and QUORUM HEALTH RESOURCES, LLC,<br>    Plaintiffs/Counter-Defendants<br>and<br>UNITED TORT CLAIMANTS,<br>    Plaintiff Intervenor<br>v.<br>LEXINGTON INSURANCE COMPANY,<br>    Defendant/Counter-Plaintiff<br>and<br>IRONSHORE SPECIALTY INSURANCE COMPANY<br>    Defendant. | No. 3-11-0449<br><br>Consolidated with Case No. 3-12-0248 |

O R D E R

Pursuant to the orders entered May 14, 2012 (Docket Entry Nos. 69-70), a case management conference was held on November 7, 2012, at which time the following matters were addressed:

1.     To the extent that the defendants sought in their motions (Docket Entry Nos. 123 and 124) to stay discovery indefinitely, the motions were DENIED. However, the motions were GRANTED to the extent that all discovery is stayed or suspended (as the plaintiffs suggested) until at least December 5, 2012, as provided herein.

2.     Although the plaintiffs opposed the defendants' requests for a stay of discovery until the underlying tort actions were resolved or at least until a decision on the pending motions for partial summary judgment on the issue of the number of applicable SIRs (Docket Entry Nos. 82, 83, 87, and 122), there was no disagreement among the parties that discovery on the "voluntary payment" issue could proceed. However, plaintiffs' counsel pointed out that deponents who would testify on that issue would also be the same deponents who would testify on other issues,

specifically, the defendants' affirmative defenses, and duplicative depositions of the same witnesses would not be efficient.

3. Counsel for defendant Lexington Insurance Company ("Lexington") represented that Lexington has agreed to represent Quorum Health Resources, LLC ("QHR") under a reservation of rights in the underlying tort actions. Although plaintiffs' counsel advised that, despite his requests, defendant Lexington has never provided him a written letter to that effect, counsel for Lexington advised that the Lexington adjustor had, in fact, sent such a letter some months ago.

To put this issue to rest, counsel for Lexington was directed to provide counsel for the plaintiffs, by November 14, 2012, a copy of the letter previously sent to plaintiffs' counsel confirming that Lexington will represent QHR or, if no such letter was previously sent, an original letter to the same effect.

4. Counsel for the plaintiff intervenor represented that the United Tort Claimants ("UTC") intends to file, by November 16, 2012, motions to amend all 70 or so complaints in the New Mexico Bankruptcy Court to delete any claims relating to fraud or intentional acts on the defendants' part, and asserting only negligence claims, and that a hearing would be scheduled on January 10, 2013, to address the motion in the unlikely event that there was any opposition.

Thus, counsel for the plaintiffs and plaintiff intervenor contended that there would no longer be a need to stay proceedings in this case because the defendants' affirmative defenses asserting policy exclusions for dishonest practices, unfair trade practices, or intentional acts would not be applicable. Counsel for Lexington suggested that, even if the UTC made no fraudulent or intentional acts claims, the proof in the underlying cases could show that the defendants' actions were, in fact, intentional acts even if the plaintiffs did not assert such causes of action.

5. UTC counsel was directed to provide to counsel for defendant Lexington copies of the proposed amended complaints by November 14, 2012.

On November 7, 2012, UTC counsel mailed all counsel and the Court information about the expected scenario once the motions to amend the complaints are filed and provided a sample motion to amend, proposed amended complaint, and notice of hearing.

If counsel for defendant Lexington believes it is necessary to have copies of the proposed amended complaint for all approximately 70 cases, he shall so advise counsel for UTC.

6. By December 5, 2012, defendants Lexington and Ironshore shall determine what affirmative defenses and claims in Lexington's counter-claim they intend to pursue, and, with plaintiffs, shall file a stipulation of dismissal of those affirmative defenses and counter-claims it will not pursue. Assuming at least some affirmative defenses are eliminated, it will not be necessary to take discovery on those issues.

7. Although there is now effectively a stay of discovery until December 5, 2012, if the plaintiffs seek discovery between December 5, 2012, and January 4, 2013, to which the defendants object, counsel shall schedule a telephone conference call with the Court to address any such disputed matters.[1]

8. A further case management conference is scheduled on **Friday, January 4, 2013, at 9:00 a.m.,** in Courtroom 764, U.S. Courthouse, 801 Broadway, Nashville, TN, to address what affirmative defenses/counter-claims remain, what discovery is necessary for those affirmative defenses, whether the defendants still want to stay any portion of discovery, extensions of scheduling deadlines, and any other appropriate matters.

It is so ORDERED.

JULIET GRIFFIN
United States Magistrate Judge

---

[1] The Court assumes that it would be unlikely that the plaintiffs would seek to take or that the parties could make arrangements to take depositions between December 5, 2012, and January 4, 2013, given the end-of-the year holidays.